Mark Adamson, USB # 14938
Utah IEP Advocates
620 East 100 South
Salt Lake City, Utah 84103
(385) 495-5099
markadamson@utahiepadvocates.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JT as parent and guardian of RT a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>MOUNTAIN WEST MONTESSORI ACADEMY, a Utah Public Charter School,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:19-cv-00865-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff, RT, by and through his parent and next friend, JT, hereby submits the following complaint.

**I.   JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 28 U.S.C § 1415(i)(3) and pursuant to 28 USC § 1331 and 1343.

2. This Court has personal jurisdiction over this matter because the defendant is a public charter school located in Salt Lake County, Utah.

4829-3284-6245v1

    3. Venue is proper in this Court under 28 U.S.C § 1391(b) because all of the events that are at issue in this dispute took place within Salt Lake County, Utah, and both parties are residents of Utah.

## II. PARTIES

    4. Plaintiff RT, is a 10 year old child, residing in Salt Lake County, Utah. RT is eligible for special education services under the qualifying condition of Other Health Impairment and is entitled to the legal rights and remedies set forth in the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 et seq.

    5. Plaintiff JT is the mother of RT, a student with a disability. Plaintiff JT is entitled to the legal rights and remedies set forth in the IDEA. 20 U.S.C. § 1400 et seq.

    6. Defendant Mountain West Montessori Academy (MWMA) is located at 4125 Foxview Dr, South Jordan, UT 84095. MWMA is a public entity duly incorporated and operating under Utah Law as a public charter school authorized by the Utah State Charter School Board and the Utah State Board of Education.

    7. MWMA is a public charter school who receives funds from the state of Utah to educate students at the public's expense. MWMA is also a recipient of Federal funds and is the recipient of Title I grants to educate students at the public's expense. NWMA is a "local educational agency" ("LEA") as that term is defined in 20 USC § 1415(i)(2)(A).

## III. BASIS OF THE DISPUTE

    8. Under IDEA, states must ensure that a free appropriate public education ("FAPE") is provided to students with disabilities. 20 U.S.C. § 1412(a)(1)(A).

9. A FAPE consists of special education and related services that meet the standards of the State educational agency and are provided in conformance with an individualized education program ("IEP"). 20 U.S.C. § 1401(9).

10. An IEP is a written statement of the child's present levels of educational performance, including how the child's disability affects his involvement and progress in the general curriculum, a statement of measurable annual goals and short-term objectives, a statement of special education services that are to be provided to the child, and an explanation of the extent to which the child will not participate with non-disabled students. 20 U.S.C. §§ 1401(14) and 1414(d)(1)(A).

11. Special education consists of instruction that is specially designed to meet the unique needs of the child. 20 U.S.C. § 1401(29). Parents who believe that the LEA, i.e., the school district, has not met its obligations under the IDEA may file a due process complaint to have the dispute resolved at an impartial due process hearing conducted by the SEA. 20 U.S.C. § 1415(f)(1)(A).

12. Petitioner filed a due process complaint against Respondent on May 17, 2019. In the initial complaint Respondent was put on notice that Petitioner was seeking remedies for violations of the child find obligation of the IDEA dating back to when he was first enrolled at MWMA in August 2016. Respondent was also put on notice that Petitioner was asking for an impartial hearing officer to find that the statute of limitations on the child find violations dating back to as far as August 2016 had not yet been met. In their reply Respondent raised the defense that they statute of limitations prevented Petitioner

3

from seeking recovery for claims that occurred more than two years prior to the date of the initial filing. In Respondents' answer they acknowledged that the determination of when the statute of limitations began to run was at issue and asked that the Hearing Officer find that the appropriate date was two years from the date of filing.

13. Initial date of filing was April 26, 2019

14. An amended complaint was filed June 6, 2019.

15. Hearing were held Sept. 6, 2019 and Sept. 9, 2019

16. Officer's decision was delivered at 11:58 p.m. on Oct. 4, 2019.

## IV. FACTUAL ALLEGATIONS

17. RT has ADHD and anxiety, which when left unaddressed, impede his ability to be educated, and limit his access to peers.

18. RT first began attending MWMA in August, 2016, at the start of his second grade year. He was in a class that had students from 1st, 2nd and 3rd grade. His teacher was Terri Stevens.

19. RT has demonstrated symptoms of his ADHD and his anxiety from a young age and the problems associated with his disability were apparent to MWMA staff from the first day he began to attend the school. RT had problems appropriately engaging in peer interactions, following instructions, staying on task and struggled to complete his assigned work.

20. On August 17, 2016, his third day of school, RT was removed from his peers after getting into a fight at recess.

21. RT was sent to a room that MWMA staff referred to as "The Behavior Room."

22. The behavior room is not a classroom and it does not have a teacher in it. MWMA staffs the room with an unlicensed and unsupervised para-educator that has no specialized knowledge concerning behavior and is not qualified to offer instruction.

23. RT's mother was notified about some, but not all of the times he was sent to the "Behavior Room." The unlicensed and unsupervised para-educator kept an informal log of some, but not all of his visits. According to these informal logs RT was sent to the "Behavior Room" on at least 38 separate occasions during 2016-2017 school year.

24. RT's second grade teacher was concerned about his ability to complete work and was in frequent communication with RT's mother on a nearly daily basis. These communications occurred in person by mail and by text messages.

25. On September 22, 2016 RT's teacher reported to his parent concerns about him falling behind.

26. RT's teacher modified RT's expectations by lowering the expected amount of work he needed to complete daily.

27. RT's parents were concerned about the difficulties their son was experiencing at school and frequently shared these concerns and sought feedback from MWMA staff.

28. In early Spring 2017, RT's mother expressed concern that her son was having an unusually high level of distractibility and had a hard time focusing in class. In response, the school gave her a flyer titles "might it be ADHD?" In response to receiving this flier, RT's mother scheduled an appointment with RT's pediatrician. The pediatrician told her

that he could not provide a diagnosis of ADHD, but did prescribe his medication for the condition.

29. RT's pediatrician gave his mother a referral to a Psychologist who could provide an evaluation at the family's expense.

30. RT's teachers were aware that he was prescribed ADHD medication

31. The MWMA principal testified that she assumed RT was diagnosed with ADHD when he was prescribed medications.

32. RT's parents were very uneasy about giving their son a controlled substance, and worked hard to find alternative means to address his ADHD that did not involve the administration of a schedule II controlled substance. RT's mother began alternating between days RT was given his medication and when he did not. On his "off days" RT's mother gave RT a holistic medication that had been successful for others.

33. RT's mother received immediate feedback from MWMA staff that they felt RT was significantly better on days he took his medication.

34. RT's mother made an appointment to have RT evaluated on the earliest date possible which was not until January of 2018.

35. RT's mother made MWMA staff aware that the evaluation could not be conducted until January 2018 in August or September 2017. At this time she asked MWMA staff if RT could begin receiving specialized services now that he was taking medication for ADHD. She was told they could not do anything until they received an official diagnosis.

4829-3284-6245v1

36. RT continued to struggle in school, both academically and socially during the 2017-2018 academic school year.

37. RT's teacher filled out a BASC3 teacher survey as part of his private assessment in which she identified ways RT struggled in her class.

38. RT's evaluation occurred in January and February 2018  RT's parents paid for the evaluation, the evaluation was not paid for by an insurance company.

39. MWMA received a copy of the evaluation on March 2, 2018.

40. MWMA spoke to the Psychiatrist and was notified by the private evaluator intended to complete some further evaluations to rule out Autism.

41. MWMA notified RT's parents that they would hold an IEP meeting after they were able to complete their private evaluations for Autism.

42. Sometime around March of 2018 RT's teacher reported that RT was removed from her class to be evaluated by the MWMA special education team.  MWMA did not seek consent from RT's parents to conduct these evaluations.  To date MWMA has not provided copies of any reports or summaries of these evaluations to RT or JT..

43. On April 20, 2018, MWMA first asked RT's parents for consent to evaluate RT for special education services.  This was also the first time that RT's parents were informed of the parent procedural safeguards contained in the IDEA.  This is also the first time RT's parent's became aware of the ability

44. An IEP meeting was held for RT in the last week of the third-grade school year on May 21, 2018. This was the first meeting MWMA ever held to develop individualized programming to address RT's unique needs.

45. MWMA staff reported that when RT returned to school in August 2018 his needs for specialized instruction changed and became much more severe.

46. Between 8/31/2018 to 9/7/2018 RT's family went on a trip to Hawaii and RT missed 5 days of school.

47. RT contracted chicken pox and missed 3 days of school between October 10, 2018 to October 12, 2018

48. RT continued to experience academic and social challenges at the beginning of the 2018-2019 school year, and his social struggles worsened.

49. On November 6, 2018 MWMA held an IEP meeting with RT's parents to discuss their concerns. RT's father engaged in experiential instruction as part of his profession and had developed a reputation as being a leader in the field. At the meeting RT's father expressed that he would like to homeschool RT.

50. On November 11, 2018 RT's mother walked into her room and found that RT had removed a gun from their gun safe. RT told his mother that he intended to load the gun and shoot himself in the head. RT's mother immediately notified MWMA of this incident in an email in which she expressed a strong desire to pull RT from MWMA and offer him homeschool instruction.

4829-3284-6245v1

51. Immediately following this event RT's parents began modifying their lifestyle to accommodate offering RT the supports he needed to be homeschooled. RT's parents began homeschooling him full time starting on November 26, 2018.

52. On November 15, 2018 MWMA amended RT's IEP to add a few facts to the Present Levels of Academic Achievement and Functional Performance. The amendment made no changes to the specialized instruction RT was to receive to address a change of circumstances.

53. On November 15, 2018 MWMA requested permission to conduct additional evaluations on RT.

54. RT's parents began homeschool instruction on December 7, 2018, and informed MWMA of this action on December 14, 2018 and officially withdrew RT from MWMA.

## FIRST CAUSE OF ACTION

### (Violation of Child Find Obligations and Denial and Free Appropriate Public Education)

55. Plaintiffs incorporate by reference the allegations of each and every preceding paragraph as though fully set forth herein.

56. MWMA had the duty to provide a FAPE to RT as soon as they suspected that he might require educational services.

57. MWMA should have suspected that RT might require educational services when they began to notice that RT was displaying the symptoms associated with children who have ADHD.

58. Symptoms associated with ADHD include: making careless mistakes, difficulty holding attention on tasks, failure to follow verbalized instructions, problems with organization, hyperactivity, impulsivity, and engaging in inappropriate behavior.

59. RT displayed symptomology of ADHD as soon as he began attending school at MWMA.

60. RT's teacher and other MWMA staff members were aware of RT's symptomology and were concerned about how these symptoms were adversely impacting his ability to be educated.

61. RT was frequently removed from his class and denied access to his peers when he displayed the symptomatology associated with ADHD.

62. When RT's mother raised concerns about these issues MWMA failed to assess these areas of suspected disability.

63. MWMA violated their Child Find duty when they wrongfully told RT's mother that they could not provide educational services until she obtained a private diagnosis at the family's expense.

64. The MWMA principal offered testimony at the hearing that she assumed that RT had been diagnosed with ADHD when RT was prescribed medication.

65. MWMA received an official diagnosis from the evaluation that his parents paid for in February 2018 yet they still did not fulfill their Child Find duties until April 20, 2018 when they first asked RT's parents for consent to evaluate.

66. MWMA's failure to fulfill their Child Find duties resulted in a denial of FAPE which harmed RT.

67. Plaintiffs are entitled to, among other relief, reasonable costs and attorney fees pursuant to 20 U.S.C. 1415(i)(3)(B).

## SECOND CAUSE OF ACTION

### (Violation of Free Appropriate Public Education)

68. Plaintiffs incorporate by reference the allegations of each and every preceding paragraph as though fully set forth herein.

69. MWMA had the duty to provide a FAPE to RT as soon as they suspected that he might require educational services.

70. MWMA suspected, or should have expected. that he was a student who might require educational services under the IDEA.

71. MWMA did not provide a FAPE as required by the IDEA.

72. RT was denied a FAPE by MWMA's actions.

73. Plaintiffs are entitled to, among other relief, reasonable costs and attorney fees pursuant to 20 U.S.C. 1415(i)(3)(B).

## THIRD CAUSE OF ACTION

### (Deprival of Due Process)

74. Plaintiff was not afforded due process at the underlying hearing

75. USC § 1415 (h)(2), amd CFR § 300.512 specifically affords any party to a hearing the right to confront witnesses and evidence.

76. The Utah Administrative Code Rule R305-7-314(3)(a)(ii) specifically allows ALJ's to admit hearsay into evidence but explicitly states, "However, no finding of fact may be

based solely on hearsay evidence unless that evidence is admissible under Section 63G-4-206 and, to the extent it is not inconsistent with that section, the Utah Rules of Evidence."

77. No exception to this rule exists to support these findings.

78. The Hearing Officer wrongfully included findings of fact that were based upon hearsay alone.

79. The findings of fact that the Hearing Officer included were material to his ruling against Plaintiff.

80. Plaintiff was denied the right to receive due process and wrongfully denied recovery due to the Hearing Officer's wrongful actions.

## FOURTH CAUSE OF ACTION

81. Plaintiffs refer to, and incorporated herein by reference, all the preceding paragraphs as though fully herein.

82. At all relevant times RT was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990 ("Title II"). Tittle II subpart A prohibits discrimination by any "public entity," including any state or local goverment as defined by 42 U.S.C. § 12131, section 201 of the ADA.

83. MWMA is considered "public entities" and are subject to Title II.

84. Pursuant to 42 U.S.C. § 12131, section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs or activities of a public entitiy, or be subected to

discrimination by any such entity. Plaintiff RT, was at all times relevant herein a qualified individual with a disability as defined therein.

85. MWMA discriminated against RT by their actions or inactions in denying equal access to educational services and by failing to provide reasonable accommodations and/or modifications to account for RT's needs.

86. as a direct and proximate result of Defendants' discrimination, RT and JT suffered damages in an amount to be proven at trial.

87. As a result of Defendants' failure to comply with their duties under Title II, RT and JT have suffered damages including special and general damages according to proof.

88. Plaintiffs are entitled to, among other relief, reasonable costs and attorney fees pursuant to 20 U.S.C. 1415(i)(3)(B).

## FIFTH CAUSE OF ACTION

89. Plaintiff refers to, and incorporated herein by reference, all the preceding paragraphs as though fully set forth herein.

90. Section 504 of the Rehabilitations Act of 1973 (29 U.S.C.§ 749, et seq.) ("Section 504") provides that "no otherwise qualified individual with a disability shall, solely by the reason of his disability, be excluding from participation in, be denied the benefits of, or be subjected to discrimination under any program or ativity receiving federal financial assistance."

91. Plaintiffs RT and JT are informed, believe, and, based thereon, allege that MWMA are, and at all relevant times have been the recipients of federal financial assistance, and that

part of that financial assistance has been used to fund operations, construction and/or maintenance of the specific public facilities and programs described herein.

92. RT is a qualified individual with disability subject to the protections of Section 504. RT has ADHD and anxiety that substantially limits his major life activities of, *inter alia* communication, academics, behavior, and social/emotional functioning.

93. MWMA discriminated against RT in violation of Section 504 by their actions or inactions in denying equal access to educational services by failing to provide reasonable accommodations and/or modifications to address RT's unique needs as a student with ADHD and anxiety.

94. As a result of MWMA's failure to comply with their duties under Section of 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 , and the regulations promulgated thereunder, RT and JT have suffered damages including special and general damages according to proof.

95. As a direct and proximate result MWMA's discrimination, RT and JT suffered damages in an amount to be proven in trial.

96. Plaintiffs are entitled to, among other relief, reasonable costs and attorney fees pursuant to 20 U.S.C. 1415(i)(3)(B).

## V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. That the Court enter judgment in Plaintiffs' favor on all claims brought by Plaintiffs;

B.      That the Court overrule the ALJ's Decision as requested herein;

C.      That the Court enter an Order requiring Defendant to:

i. provide appropriate compensatory services in an amount to be proven at trial

ii. pay Plaintiff monetary damages in an amount to be proven in trial

D.      That the Court enter an Order requiring Defendants to pay Plaintiffs costs and attorney's fees incurred in this action and the underlying administrative hearing pursuant to 20 U.S.C. 1415(i)(3)(B);

E.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 4th day of November, 2019.

/s/Mark Adamson
MARK ADAMSON
UTAH IEP ADVOCATES
620 East 100 South
Salt Lake City, Utah 84103
(385) 495-5099
markadamson@utahiepadvocates.org

4829-3284-6245v1